[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
BACKGROUND
The two cases cited above are both administrative appeals returnable to the Judicial District of Waterbury. In case No. CV96 0135881 Highfield Meadows Ltd, Partnership vs. City ofWaterbury Zoning Board of Appeals, et als, the plaintiff appealed from a decision by the Waterbury Zoning Board of Appeals denying the plaintiff a variance which would have permitted parking of cars on the driveway of the subject property. In case No. CV 970137815 Highfield Meadows Ltd., Partnership vs. City of WaterburyZoning Board of Appeals, et al, the plaintiff appealed from a decision of the Waterbury Zoning Board of Appeals denying the plaintiff's Appeal of Decision of the Zoning Enforcement Officer. That decision of the Zoning Enforcement Officer involved the same issue — parking of cars on the same property. CT Page 4906
This court granted a motion to consolidate these two cases for the reason that they both are administrative appeals under Sec. 8-8 of the General Statutes, they concern the interpretation of the same sections of the Waterbury Zoning Regulations (hereinafter referred to as Regulations) and they involve the same parties and the same piece of real property — a one family residence in a subdivision owned by the plaintiff and known as 99 Kara Drive (Lot 53) in the city of Waterbury.
This memorandum addresses only the issues presented to the court in regard to Case No. 2 CV97 0137815 — the plaintiff's appeal from the decision of the Zoning Enforcement Officer not to issue a Certificate of Zoning Compliance to Highfield.
FACTS
On February 14, 1997 Highfield filed an appeal from a January 21, 1997 decision of the Board denying Highfield's appeal from the refusal of the City of Waterbury Zoning Enforcement Officer to issue a Certificate of Zoning Compliance to Highfield. Said certificate pertains to Lot 53-99 Kara Drive in Waterbury and it is necessary for the issuance of a Certificate of Occupancy.
This appeal was brought in two counts. The first count alleges that in denying this appeal the Board acted illegally, arbitrarily and in abuse of its discretion. The second count alleges that the Board failed to conduct a statutory public hearing within the time periods mandated by the General Statutes and that Highfield is therefore is entitled to automatic approval of the appeal.
Highfield is a Connecticut Limited Partnership and the owner of real property known as Lot 53-99 Kara Drive which is an approved subdivision lot as shown on the Highfield Meadows Subdivision Plan, duly approved by the City of Waterbury Land Use Agencies. The lot is located in a R.L. Residential Zoning District.
As the owner of the subject property (Plaintiff's Ex. 1) the plaintiff is found to be an aggrieved party as that term is defined by Sec. 8-8(1) of the General Statutes.
Highfield had previously applied for and received the necessary building permits for the construction of a single CT Page 4907 family residence on said lot. The residence was subsequently constructed and this controversy arose when the plaintiff sought and was denied a Certificate of Zoning Compliance from the Zoning Enforcement Officer.
The reasons given by the zoning enforcement officer for his refusal to grant a certificate of zoning compliance all related to the driveway and/parking area of said house.
The main thrust of Highfield's appeal from the decision of the Zoning Enforcement Officer is the claim that there is an inconsistency in certain sections of the Regulations, specifically Sec. 3.24 (Minimum yard and open space requirement)
— which sets out the definitions of "front yard"[Sec. 3.24(a)] and "side yard" [Sec. 3.24(c)] and Sec. 5.24 (Location ofParking).
The Board argues that Sec. 5.24 (Location of Parking) is clear and unambiguous when it provides ". . . Such [off-street parking] space shall not occupy any part of any residential front or side yard or any part of any required useable open space as set forth in this ordinance."
Highfield argues that Sec. 5.24 can and, in this case, should be read in conjunction with Sections 3.24(a) and (c) "that expressly contemplate parking spaces located in portions of the front yard and side yard not required for minimum front and side yard setbacks." It argues that such a reading of the Regulations would allow for parking in a side yard of a property so long as there remained a portion of side yard wide enough to meet the overall minimum side yard requirements set forth in the Regulations. In this case, the side yard requirement for this RL lot is "Two side yards having a total width of at least sixteen (16) feet, neither of which shall be less than six (6) feet wide." Sec. 3.24(c). By that reasoning, if, for example, the side yard of a house was 17.5 feet wide from the house to the property line and a driveway took up 7.5 feet of that area, the requirement of sixteen total feet of side yard would be met (presuming that the other side yard was at least the minimum width of 6 feet wide) because the side yard would still be ten feet wide exclusive of the 7.5 foot wide driveway.
The Board in its brief argues:
"Sec. 3.24(c) does not define a "side yard" . . . Rather, it sets CT Page 4908 out the minimum area requirement for the side yard." (Emphasis added).
Plaintiff argues that if the minimums of section 3.24(c) are satisfied, then a parking space may be located in any extra space in the side yard.
This court does not agree with the interpretation of the Board. The language of the Regulations is far from clear and unambiguous.
Highfield makes the additional claim that Sec. 1.76 of the Regulations discusses "required useable open space". That section seems to infer that there can be instances of side yard parking when it provides, "The area of the front, side or rear yardswhich is not used for driveways and parking or loading purposes may be computed in determining the required useable open space." (Emphasis added).
There is a distinct difference in the language used in the sections of the Regulations which define side yards (8.95) as opposed to front yards (8.93) and rear yards (8.94).
Front yards are defined as "An open space on the same lot with the building, situated between the street line and the wallof the building nearest the street line . . ." (Emphasis added).
Rear yards are similarly defined as "An open space on the same lot with a building between the rear lot line and the rearwall of the building . . ." (Emphasis added).
Side yards are defined as "An open space on the same lot with a building situated between the building and the side lines of the lot." (Emphasis added). There is no requirement that the space be contiguous with the wall of the building as with the front and rear yards. By that definition the side yard could very well consist of some but not necessarily all of the area between the building and the side line. That is the thrust of the plaintiff's argument in support of its claim that the Zoning Enforcement Officer erred when he concluded that the regulation forbids maintenance of a parking area anywhere between the building and the side property line.
If that interpretation was correct, a car could not be parked beside a house even if the distance to the side property line was CT Page 4909 over 200 feet. That exact scenario was debated by the ZBA board members in their deliberations and it was conceded to be somewhat incongruous. A review of their discussions discloses the following repartee as contained in the Return of Record of the January 21, 1997 hearing:
PALERMO. If that's true, all it says is "such space shall not occupy any part of any residential front or side yard" . . It doesn't define what that is. "Is the side yard six feet or ten feet?"
CAIAZZO. It is very unclear. Let me tell you something: a lot of these rules have got to be changed.
MARAGES. . . . Let the Corporation Counsel do the legwork for it. "Why don't you just deny it and let them go wherever its going?" I mean really . . .
CAIAZZO. I've been doing this for ten years and I still have a problem when it comes to these side yards and what not. It is very, very confusing.
PALERMO. You have pretty much said what Vince is talking about. . . .explains in general what a side and rear yard . . .
CAIAZZO. It's not John. Its not specific.
PALERMO. It's saying from the building to the property line. He used the word "general" to bring out his point.
MARAGES. That's his argument-specific governs over general. I'll tell you, for discussion purposes, let's pull it back and just deny the thing and let it go where it has to go.
SUBSEQUENT COMMENTS:
MARAGES. In your opinion you denied certificate of occupancy because you wouldn't let them park in the side?
VIGGIANO. It's as simple as that.
SUBSEQUENT COMMENTS:
VIGGIANO. The reason it's there is so I can enforce the regulations when needed. CT Page 4910
CAIAZZO. My neighbor across the street, for 29 years, he's been in violation.
MARAGES. You'd better go knock on his door tonight. I'm sure he'll appreciate it.
VIGGIANO. That's one of the questions and I don't have the answer to that. I don't know how it's been interpreted in the past. It's always been interpreted that you can't park the car on the side of your property no matter how much space there is. There could be 200 yards . . .
CAIAZZO. There could be 200 feet on the side of a house and you can't park your car.
VIGGIANO. Yes.
MARAGES. You're not supposed to.
VIGGIANO. Very seldom will you find 200 feet on the side of a house in Waterbury.
You may find it in Sherman or Wilton . . .
CAIAZZO. Right but technically if that was the case, you still can't park your car.
VIGGIANO. Yes because that's the way the definition reads. It reads for the side . . . from the edge of the house to the property line. (Emphasis added).
MARAGES. In other words what [plaintiff's counsel]'s saying is you just can't park your car within that space that prohibits you from building six feet . . .
CAIAZZO. I see his point. Now I understand his point.
It is clear from the give and take of the commissioners that the regulations are anything but clear and unambiguous and that the interpretation given them by the Zoning Enforcement Officer, while perhaps in conformity with prior practices, was neither accurate or consistent with the language of the zoning regulations as it defines "side yard". CT Page 4911
The law is well settled that the decisions of zoning authorities are given considerable deference and they should be overturned by a court only when it is found that the agency has not acted fairly, with proper motives and upon valid reasons.McMahon vs. Zoning Board of Appeals, 140 Conn. 433, 438 (1953). This court finds that this is one of those occasions.
Having considered the statutes, the Regulations, the applicable case law, the record of the proceedings before the Board and the arguments of counsel, the court finds that the Board did act illegally, arbitrarily and in abuse of its discretion when it denied Highfield's appeal from the refusal by the Zoning Enforcement Officer to grant to Highfield a Certificate of Zoning Compliance for the subject property.
Having found for the plaintiff in the First Count, the court does not consider it necessary to take up the plaintiff's claims regarding the alleged failure of the Board to conduct a timely hearing of the plaintiff's appeal as set forth in its Second Count.
Further, having found for the plaintiff in regard to the instant case, the court finds it unnecessary to undertake to decide the companion case involving the plaintiff's appeal from the denial of a variance to the plaintiff.
Having found for the plaintiff, the court hereby sustains the plaintiff's appeal and reverses the action of the defendant Board and declares it to be null and void. The Board is directed to approve the plaintiff's Appeal of Decision from the actions of the Zoning Enforcement Officer.
By the Court,
Joseph W. Doherty Judge